CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
April 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EL PRESYNT, | ) |
| Plaintiff, | ) Case No. 7:23-cv-00619 |
| v. | ) **MEMORANDUM OPINION** |
| LARRY MEADOWS, | ) By: Hon. Robert S. Ballou |
| Defendant. | ) United States District Judge |

Plaintiff EL Presynt, proceeding *pro se*, filed a civil-rights action under 42 U.S.C. § 1983 against Defendant Larry Meadows for violations of his rights under the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, 28 C.F.R. § 551.90, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.* (*See generally* Compl. [ECF No. 1].) Defendant has moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. (*See* Def.'s Mot. to Dismiss [ECF No. 13].) For the reasons set forth below, the Court will grant in part and deny in part Defendant's motion.

I.  **BACKGROUND**

Plaintiff's claims arise from events occurring while he was incarcerated at Keen Mountain Correctional Center ("KMCC"). (*See* Compl. ¶ 3.) Plaintiff, who identifies as an Orthodox Jew, alleges that, on or about May 15, 2022, he submitted a "Religious Diet Request" ("RDR") to his assigned counselor, asking to be placed on the "Sealed

Religious Diet" ("SRD")—the diet available to inmates whose religious dietary restrictions cannot be satisfied by the main menu or the Common Fare diet. (*Id.* ¶ 6; Ex. A to Compl. [ECF No. 1-1].) When Plaintiff did not receive a response after thirty days, he raised the issue with his counselor, who told Plaintiff that his RDR has been sent to Defendant for approval or denial. (Compl. ¶ 7.) Defendant is "the Institutional Program Manager" for KMCC and, according to Plaintiff, is "legally responsible for program operations involving work, education and religious services" at that facility. (*Id.* ¶ 4.) Plaintiff sent Defendant an informal inquiry concerning his pending RDR, but Defendant never responded. (*Id.* ¶ 7.)

On July 20, 2022, Defendant performed a "round" in Plaintiff's housing unit, and Plaintiff asked Defendant about his RDR in person. (*Id.* ¶ 8.) Defendant responded that Plaintiff's request had been denied because he had failed to specify why he needed a special diet. (*Id.*) Plaintiff asked Defendant to give him a copy of the denial, but Defendant never provided one. (*Id.*)

On August 14, 2022, Plaintiff submitted another RDR, this time detailing his reasons for requesting the SRD. (*Id.* ¶ 9; *see also* Ex. A to Compl.) Specifically, Plaintiff stated he required the SRD because the food on the Common Fare diet was not "prepared using sanitary standards" and because KMCC "does not have a Priest/Rabbi on hand to bless, cleanse and purify any of the food, utensils, equipment or any of the contact surfaces the food touches." (Ex. A to Compl. 1.) For these reasons, Plaintiff stated that the food did not meet Orthodox Standards and that his religious beliefs prevent him from eating food that is "uncleansed, unblessed and unpure [sic]." (*Id.*) On November 2, 2022,

Plaintiff received a disposition notice denying his request because he had failed to provide information as to the unsuitability of the food on the main menu or Common Fare diet. (*See id.*; Compl. ¶ 10.)

On November 6, 2022, Plaintiff filed a written complaint concerning the denial of his RDR. (Compl. ¶ 11; Ex. C to Compl.) The complaint stated that, despite the reasons proffered in support of the denial of his request, he had sufficiently explained why the Common Fare on main menu diets did not meet his religious needs—namely "that the food, equipment, and utensils[,] and the contact surfaces the food touches[,] have not been blessed, cleansed[,] or purified by a Rabbi or prepared using clean standards" mandated by his religion. (Ex. C to Compl.) Defendant responded to Plaintiff's complaint on November 9, 2022, stating Plaintiff had lied in saying he was Jewish and adhered to Jewish dietary standards. (*Id.*) Defendant wrote that Plaintiff was actually part of the Wiccan religious program and explained that, while the SRD is not associated with religion specific, Plaintiff had to "provide information" based on his own religious believes or practices regarding the adequacy of the other available diets. (*Id.*; Compl. ¶ 11.) Plaintiff's insists the reasons for the denial were "not only invalid, but discriminatory as well." (Compl. ¶ 12.)

Plaintiff filed a formal grievance on November 19, 2022 (*See* Compl. ¶ 12; Ex. D to Compl.) He acknowledged, without admitting or denying, Defendant's accusation regarding the inconsistency between his request for a Jewish diet and his attendance of Wiccan religious services but insisted that he was being denied the SRD for invalid reasons not in accordance with the operations procedures governing religious diets. (Ex.

D to Compl.) The grievance was deemed unfounded, with the reviewer explaining, like Defendant that, though Plaintiff had requested the SRD based on Jewish dietary restrictions, Plaintiff "ha[d] been attending Wiccan Religious Services since 09/28/2022." (Ex. E to Compl. 1–2.)

Plaintiff appealed the grievance decision, contending he had "clearly stated that [his] beliefs and [his] diet [were] governed by Torah law." (*Id.* at 2.) He also stated, "Just because I signed up for Wiccan and I attend the Wicca services has nothing to do with me being a descendant of Abraham . . . and requesting a diet that best reflects what I believe." (*Id.*; *see also* Ex. F to Compl.) The Regional Administrator responded to Plaintiff's appeal on January 31, 2023. (*See* Ex. G to Compl.) She too determined that Plaintiff's grievance was unfounded, noting she "f[ou]nd no violation of policy." (*Id.*)

Plaintiff alleges "it is not uncommon for those who believe in Christ and adhere to Torah Law to explore Jewish Mysticism through the ideologies of Wicca." (Compl. ¶ 13.) He further alleges that he did not begin attending Wiccan services until September 28, 2022, six weeks after his submitted his second RDR. (*Id.*; Ex. L to Compl.)

On November 22, 2022, Plaintiff discovered there was a Caucasian prisoner, Corinthian Sublett, who was Jewish but attended Wiccan services. (Compl. ¶ 14.) Unlike Plaintiff,[1] Sublett was approved, by Defendant, to receive the SRD based on the same Jewish dietary standards Plaintiff had sought to follow. (*Id.* ¶ 15.)

---

[1] Plaintiff does not disclose his race in his complaint but implies that he, unlike Sublett, is not white. (*See* Compl. ¶¶ 14–15, 18–20.)

Based on his allegations, Plaintiff claims Defendant violated his Fourteenth Amendment right to equal protection under the laws, his First Amendment to freely exercise his religion, RLUIPA, and 28 C.F.R. § 551.90. (*See id.* ¶¶ 17–19.) Plaintiff sues Defendant in his individual and official capacities. (*See id.* ¶ 5.) Defendant moves to dismiss Plaintiff's claims for failure to state a claim for which relief can be granted. (*See* Defs.' Mot. to Dismiss.)

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (D.S.C. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief' as required by Rule 8." *Iqbal*, 556 U.S. at 679.

### III.   ANALYSIS

#### A. Plaintiff's Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment "prohibits states from placing people into different classes and treating them unequally for reasons 'wholly unrelated' to permissible government objectives." *Kadel v. Folwell*, 100 F.4th 122, 141 (4th Cir. 2024) (quoting *Reed v. Reed*, 404 U.S. 71, 75–76 (1971)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If a plaintiff makes such a showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002). In the prison context, this involves determining "whether the disparate treatment is reasonably related to any legitimate

penological interests." *Id.* (citations omitted); *see also Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) ("To account for the unique health and welfare concerns in the prison context, our review of a plaintiff's challenge to a prison decision or policy is more demanding, as we accord deference to the appropriate prison authorities.").

Defendant argues that Plaintiff has not stated a plausible equal-protection claim because his allegations do not show that any unequal treatment was the result of intentional or purposeful discrimination. (Memo. in Supp. of Def.'s Mot. to Dismiss 5–6.) The Court agrees.

"[T]o prove that a statute has been administered or enforced discriminatorily, and so violates equal protection rights, a plaintiff must show *more* than the fact that a benefit was denied to one person while conferred on another." *Townes v. Jarvis*, 577 F.3d 543, 552 (4th Cir. 2009) (citing *Sylvia Dev. Corp. v. Calvert Cnty.,* 48 F.3d 810, 819 (4th Cir.1995)) (alterations and internal quotation marks omitted). "To meet this requirement, he must set forth 'specific, non-conclusory factual allegations that establish improper motive.'" *Johnson v. Stevenson*, No. CIV.A. 5:13-1616-TMC, 2014 WL 6748956, at *2 (D.S.C. Dec. 1, 2014) (quoting *Williams v. Hansen,* 326 F.3d 569, 584 (4th Cir. 2003)).

Here, Plaintiff offers only conclusory allegations that Defendant's actions were "discriminatory on the basis of religion and race" or were motivated "by reason of Plaintiff's race/color." (*See* Compl. ¶¶ 19–20.) But Plaintiff has not alleged any *facts* that would allow the Court to reasonably infer that Defendant's actions were motivated by purposeful and intentional discrimination. Accordingly, he has not stated an equal protection claim against Defendant. *See Townes*, 577 F.3d at 522 (finding no equal

protection violation where the plaintiff "allege[d] *no* facts that, if proved, would demonstrate that the Board *intentionally* discriminated against him"); *Cheatham v. Muse*, 617 F. App'x 252, 254 (4th Cir. 2015) (affirming dismissal of prisoner's equal protection claim where his allegations showed, "[a]t most," that the defendant's actions were motivated by "some unexplained personal dislike or vendetta against him"). The Court will therefore grant Defendant's motion to dismiss this claim.

### B. Plaintiff's Claim Under 28 C.F.R. § 551.90

Plaintiff's claim for violation of 28 C.F.R. § 551.90 is similarly based on Defendant's alleged racial or religious discrimination. (*See* Compl. ¶¶ 19–20.) This regulation states:

> Bureau staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or political belief. This includes the making of administrative decisions and providing access to work, housing and programs.

28 C.F.R. § 551.90.

Plaintiff has not stated a plausible § 1983 claim based on the violation of this regulation. This statute applies to employees of the federal Bureau of Prisons. *See id.* Defendant is not a federal BOP employee but an employee of the Virginia Department of Corrections at the Keen Mountain Correctional Center. (*See* Compl. ¶ 4; *see also id.* at 8 (case caption identifying Defendant with the Virginia Department of Corrections).) Accordingly, § 551.90 has no application to him. And even if the regulation applied Plaintiff's failure to allege facts showing intentional discrimination preclude any finding that Defendant's actions violated § 551.90. *See, e.g., Begay v. Leap*, No. 3:17-CV-2639-

- 8 -

N-BT, 2019 WL 2719323, at *2 (N.D. Tex. May 28, 2019), *report and recommendation adopted*, No. 3:17-CV-2639-N-BT, 2019 WL 2716501 (N.D. Tex. June 28, 2019) (dismissing claim under 28 C.F.R. § 551.90 where plaintiff made only conclusory allegation of discrimination that was not supported by factual allegation). For these reasons, the Court will grant Defendant's motion to dismiss this claim.

### C. Plaintiff's First Amendment Claim

The Free Exercise Clause of the First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) (citations omitted). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Id.* (quoting *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)). "Under the Free Exercise Clause a prisoner has a clearly established right to a diet consistent with his religious principles." *Atkins v. Md. Div. of Corr.*, No. CIV.A. PWG-14-3312, 2015 WL 5124103, at *8 (D. Md. Aug. 28, 2015) (citing *Wall v. Wade,* 741 F.3d 492, 498–500 (4th Cir. 2014)).

Defendant argues that Plaintiff cannot satisfy this initial burden. (*See* Memo. in Supp. of Def.'s Mot. to Dismiss 1–5.) He contends that, because Plaintiff does not outright allege that the food on the prison's general menu violates his "religious exercise." (*Id.* at 3–4 (arguing that Plaintiff's allegations concern only the "blessed" and "sanitized" status of "the utensils and contact surfaces the food touches").) The Court

- 9 -

disagrees. The informal written complaint which Plaintiff attaches, cites to, and incorporates by reference into his complaint states that "the *food*, equipment, the utensils and surfaces the food touches have not been blessed, cleansed or purified by a Rabbi or prepared using clean standards, which are the standards my religion mandates I adhere to." (Ex. C to Compl. (emphasis added).)

Moreover, Defendant's contention that Plaintiff's dietary concerns are merely "inconveniences" that the prison is not required to accommodate is unavailing in light of Plaintiff's allegations. Although some courts have found that prisons are not required to offer completely kosher meals when legitimate penological interests prevent them from doing so, *see, e.g.*, *Mason v. Twin Falls Cnty. Sheriff*, No. 3:23-CV-00570-AKB, 2024 WL 625401, at *6 (D. Idaho Feb. 14, 2024) (collecting cases), in this case, Plaintiff alleges that one of the meal plans his facility offers—and one that other inmates access—satisfies his religious dietary preferences. Accordingly, reviewing the complaint in the light most favorable to Plaintiff, the Court cannot say, at this stage in the litigation, that a legitimate penological interest, such as cost or efficiency, prevented Defendant from granting Plaintiff's request for the SRD. The Court will therefore deny Defendant's motion to dismiss his First Amendment claim.

### D. Plaintiff's RLUIPA Claim

Under RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person —

>> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). To establish a claim under RLUIPA, an inmate "bears the initial burden of establishing that a prison policy substantially burdens his or her ability to practice in accordance with a sincerely held religious belief." *Greenhill*, 944 F.3d at 250 (citing *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015)). The term "substantial burden" has the same meaning in the RLUIPA context as it does in the First Amendment context. *Id.* (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). Thus, "a substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand." *Id.*

Defendant's arguments in favor of dismissal of Plaintiff's RLUIPA claim mirror those concerning Plaintiff's First Amendment claim and thus fail for the same reasons identified above. However, "Congress has not authorized damages claims against state officials under [RLUIPA]." *Atkins*, 2015 WL 5124103, at *9 (D. Md. Aug. 28, 2015) (collecting cases). Accordingly, to the extent Plaintiff seeks damages based on Defendant's alleged violation of RLUIPA, the Court will grant Defendant's motion to dismiss such claims. Only Plaintiff's claims for declaratory and injunctive relief under RLUIPA will proceed.

**IV.    CONCLUSION**

For all these reasons, Defendant's motion to dismiss (ECF No. 13) will be **GRANTED IN PART** and **DENIED IN PART**. The Court will **DISMISS** Plaintiff's equal-protection claims, his claim under 28 C.F.R. § 551.90, and his RLUIPA claim for damages. His First Amendment and RLUIPA claims for declaratory and injunctive relief will be allowed to proceed.

Additionally, because Defendant timely appeared in this action and there is no basis for entering a default judgment against him, the Court will **DENY** Plaintiff's motion for default judgment (ECF No. 23).

The Clerk is **DIRECTED** to send a copy of this memorandum opinion and the accompanying order to Plaintiff at his place of confinement.

Enter:  April 11, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge